**UNITED STATES of America**

v.

**Beverly MAIER, Defendant.**

**No. 90 Cr. 0170 (RWS).**

United States District Court, S.D. New York.

Nov. 6, 1991.

SENTENCING OPINION

SWEET, District Judge.

Defendant Beverly Maier ("Maier") pled guilty on April 3, 1990, to one count of distributing and possessing with the intent to distribute heroin, 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(C). Pursuant to an opinion dated July 1, 1991, this Court sentenced Maier to 51 months of imprisonment followed by three years of supervised release, subject to modification as a result of her sentencing hearing. At the sentencing hearing, which was held October 24, 1991, the Court received additional information that was not available when the original sentencing opinion was prepared.

For the reasons set forth below, the July 1, 1991, opinion is withdrawn and, in a departure from the United States Sentencing Guidelines ("Guidelines"), a sentence of four years of probation will be imposed. Pursuant to 18 U.S.C. § 3013, a special assessment of $50.00 is mandatory.

*The Guidelines*

The Presentence Report prepared by the United States Probation Office grades Maier's offense conduct under the United States Sentencing Guidelines ("Guidelines") at a total offense level of 24 and assigns her a Guidelines criminal history category of I. The Guidelines provide for an imprisonment range of 51 to 63 months and a supervised release period of 3–5 years. A departure from the Guidelines is warranted when " 'there exists an aggravating or mitigating circumstance ... not adequately taken into consideration by the Sentencing

Commission in formulating the guidelines.'". Guidelines § 5K2.0 (quoting 18 U.S.C. § 3553(b)).

▮ In establishing the Guidelines, "it was not Congress' aim to straitjacket a sentencing court, compelling it to impose sentences like a robot inside a Guidelines' glass bubble, and preventing it from exercising discretion, flexibility or independent judgment." *United States v. Lara*, 905 F.2d 599, 604 (2d Cir.1990). Nor did it intend to remove rehabilitation entirely from the sentencing process. *Id.* Rather, a sentencing court must consider, among other things, "the history and characteristics of the defendant," and the need for the sentence to "protect the public from further crimes of the defendant" and to "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). Thus each defendant must be treated as an individual in the sentencing process. *United States v. Rodriguez*, 724 F.Supp. 1118, 1119–20 (S.D.N.Y.1989) (Leval, J.); *see also* U.S.S.G. § 1B1.4.

A downward departure is appropriate in this instance. Maier is a first-time offender who has endured a trying life. Her childhood was one of abuse, neglect, and terror in an alcoholic environment. She has been addicted to heroin for over fourteen years, and her life during this period has been a textbook example of the devastation heroin addiction can inflict.

At the time of her arrest, Maier was injecting herself with .50 grams of heroin daily. Since then, Maier has attempted to rid herself of her drug dependency. She currently is participating in a methadone program at St. Lukes/Roosevelt Hospital and is making progress toward completely freeing herself from the throes of addiction. She also has gone back to school to learn how to become a court reporter and is presently employed.

Fourteen years of heroin addiction cannot be cured overnight. The process is gradual and trying, requiring both mental and physical support. *See* Herman Joseph, *The Criminal Justice System and Opiate Addiction: A Historical Perspective, in* III Nat'l Institute on Drug Research, Compulsory Treatment for Drug Abuse: Research and Clinical Practice, Research Monograph 106, 123 (1988) [hereinafter Research Monograph]. "Cold turkey" withdrawal frequently is not effective in such situations, as evidenced by Maier's experience in the Government-sponsored three-week Mt. Carmel program. There, her dosage was reduced to 5 mg. a day from 30 mg. a day, achieving a "drug-free" state for the last three days. Once the program was completed, however, there was no after-care program to help the patient adjust, and Maier, having endured physical suffering, was unable to succeed in achieving total abstinence without additional support. She therefore reentered St. Luke's methadone program and continues to receive treatment there.

▮ If incarcerated, Maier would be unable to continue methadone treatment in an effective manner. Only one federal institution allows some methadone maintenance therapy, the Metropolitan Correctional Center in New York City. The program there, however, is limited to 7 to 21 days, a time period that has already been proven ineffective in the present instance. *See also,* Herman Joseph, *supra.* Moreover, her psychoanalyst, Dr. Richard Goldstein, notes:

> If denied methadone at this time and for the foreseeable future until she reaches her goal of becoming methadone-free (a time to be measured not in weeks or even months, more likely in several years, if successful), I truly fear for her life. If she is thrust into a drug-free "cold turkey" state, the consequences are unpredictable with any reasonable degree of medical certainty. What is predictable is that she will suffer in a fashion enormously cruel....

Letter from Dr. Richard Goldstein 8 (Oct. 9, 1991).

Finally, Maier's arrest for possessing heroin and possessing heroin with an intent to distribute are a direct fallout of her addiction. It is unlikely that she will ever commit this crime again, once she is free of

her addiction. Therefore, in light of this, her history and efforts to date, and her need for continuing effective methadone treatment, a downward departure is warranted. Maier has a long road ahead of her, and jail would most likely undo her efforts to free herself from addiction. Society has much more to gain from having her become completely independent from her addiction than from exercising "ritualistic punishment." *Rodriguez,* 724 F.Supp. at 1119; *see also United States v. Harrington,* 947 F.2d 956, 962 (D.C.Cir.1991) (pretrial drug rehabilitation might justify departure); *United States v. Sklar,* 920 F.2d 107, 116 (1st Cir.1990) (same); *United States v. Maddalena,* 893 F.2d 815, 818 (6th Cir.1989) (defendant's efforts at staying away from drugs grounds for departure).

The Government argues that the defendant's drug addiction militates in favor of incarceration. In support of this position, the Government relies on Guidelines Policy Statement § 5H1.4. It states that "[d]rug dependence or alcohol abuse is not a reason for imposing a sentence below the guidelines. Substance abuse is highly correlated to an increased propensity to commit crime." However, Maier seeks to end her dependency and end any propensity she has for committing crime. The Policy Statement therefore is not applicable. *See Harrington,* 947 F.2d 962 (D.C.Cir.1991); *United States v. Sklar,* 920 F.2d 107, 116 (1st Cir.1990). *But see United States v. Martin,* 938 F.2d 162, 163 (9th Cir.1991); *United States v. Pharr,* 916 F.2d 129, 132–33 (3d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991). *See generally Harrington,* 947 F.2d at 958–62 (discussing varying approaches taken by courts to drug rehabilitation efforts under the Guidelines).

Furthermore, the Sentencing Commission has ignored Congress's mandate to consider the purposes of sentencing in promulgating the Guidelines. *See* Kenneth R. Feinberg, *The Federal Guidelines and the Underlying Purposes of Sentencing,* 3 Fed.Sent.R. 326 (May/June 1991); *United States v. Mercedes,* 90 Cr. 0450, slip op. at 3, 1991 WL 210945 (S.D.N.Y. Oct. 4, 1991).

A downward departure is proper for this reason also.

Congress requires a court to consider the four traditional justifications of criminal sentencing when imposing a sentence: First, there is the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment." Second is the need "to afford adequate deterrence." Third is the need "to protect the public from further crimes of the defendant." And fourth is the need to "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 28 U.S.C. § 3553(a)(2). A court is required to analyze each of these factors in imposing a sentence, especially a departure. *See, e.g., United States v. Kalady,* 941 F.2d 1090, 1099 (10th Cir.1991).

The Sentencing Commission is also under a Congressional mandate to satisfy each of these purposes in promulgating the Guidelines. *See* 28 U.S.C. § 991(b)(1)(A). Related to this is the requirement, largely ignored to date, that the Commission conduct research to determine which of these purposes the Guidelines support. *See* Kenneth R. Feinberg, *supra.* Without guidance from the Commission, a departure is justified when the Guidelines fail to satisfy Congress's mandate.

Much research has been published since the Guidelines were promulgated showing that comprehensive drug treatment programs can be effective in reducing both drug use and criminal behavior. *See, e.g.,* Robert L. Hubbard et al., *The Criminal Justice Client in Drug Abuse Treatment, in* Research Monograph, *supra,* at 57, 74; Herman Joseph, *supra,* at 117–24; D. Dwayne Simpson & H. Jed Friend, *Legal Status and Long–Term Outcomes for Addicts in the DARP Followup Project, in* Research Monograph, *supra,* at 81, 91–93. As William Bennett noted in a National Drug Control Policy White Paper, "[w]e now know on the basis of more than two decades of research that drug treatment can work." Office of National Drug Control Policy, "Understanding Drug Treat-

ment," 30 (June 1990); *see also United States v. Harrington*, 741 F.Supp. 968, 974 (D.D.C.1990) (discussing the White Paper), *vacated*, 947 F.2d 956 (D.C.Cir.1991). Moreover, other studies have "not convincingly demonstrated that incarceration alone, incarceration plus treatment, or incarceration plus intensive aftercare supervision were effective approaches to the rehabilitation of narcotic addicts." James A. Inciardi, *Some Considerations on the Clinical Efficacy of Compulsory Treatment: Reviewing the New York Experience*, *in* Research Monograph, *supra*, at 126, 132.

The Guidelines currently do not take into account the findings of such research. A downward departure is thus justified. Drug rehabilitation can produce positive results and aid patients in abstaining from criminal activity. *See* Henrick J. Harwood et al., *The Costs of Crime and the Benefits of Drug Abuse Treatment: A Cost Benefit Analysis Using TOPS Data*, *in* Research Monograph, *supra*, at 209. A probationary sentence conditioned on attending a drug rehabilitation program therefore falls squarely into the second and third purposes of sentencing. By breaking the defendant of her habit, she will be deterred from committing additional crimes of this nature, thus protecting the general public from the commission of such crimes. Where there is such a long history of abuse, only intensive treatment will ensure that the defendant can be cured of her habit. A rehabilitation program therefore satisfies the fourth purpose. The first purpose is served through the imposition of a term of probation, which may be revoked if the defendant fails to live up to the terms of the sentence.

Finally, the Court notes that one of the other purposes of the Guidelines is to "reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process." 28 U.S.C. § 991(b)(1)(C). The studies show that curing a long-term heroin addiction such as Maier's can require up to a life-time of care to be truly successful. Maier has started along the road to recovery, and the studies and her doctors all point to the conclusion that incarcerating her now and depriving her of the benefit of long-term care will be counterproductive. Since the Commission has failed to adhere to its mandate in this instance also, a departure is justified.

█ The Guidelines additionally call for the imposition of a fine of $10,000 to $1,000,000 plus the cost of incarceration and/or supervision. However, based on the information provided to the probation officer, and absent any supporting documentation, Maier appears unable to pay such a fine. Section 5E1.2(f) of the Guidelines provides for reduction of the fine where, as here, the Presentence Report indicates that Maier possesses minimal financial resources. Therefore only the mandatory fine shall be imposed.

*The Sentence*

In a downward departure from the Guidelines, Maier will be sentenced to a term of four years of probation during which Maier will participate in a community drug treatment program providing methadone maintenance. This program shall be approved by the Probation Department. This period of supervised release also shall be subject to the following conditions: Maier shall abide by the standard conditions of supervised release as recommended by the Guidelines; Maier shall not violate any laws, Federal, state, or local; and Maier shall not illegally possess a controlled substance. Revocation of her supervised release is mandatory for possession of a controlled substance. The mandatory special assessment of $50.00 shall be imposed.

It is so ordered.