**UNITED STATES of America, Appellant,**

**v.**

**Beverly MAIER, Defendant–Appellee.**

**No. 1727, Docket 92–1143.**

United States Court of Appeals, Second Circuit.

Argued June 23, 1992.

Decided Sept. 23, 1992.

Stephen Fishbein, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., Linda C. Severin, Daniel C. Richman, Asst. U.S. Attys., on the brief), for appellant.

Robert I. Kalina, New York City, for defendant-appellee.

Before: VAN GRAAFEILAND, NEWMAN, and KEARSE, Circuit Judges.

---

JON O. NEWMAN, Circuit Judge:

■ This appeal by the Government of a sentence that results from a downward departure under the Sentencing Guidelines poses a significant and recurring issue as to the bounds of a district court's sentencing discretion in selecting an appropriate sentence for a drug addict endeavoring to end her addiction. The issue arises on the Government's appeal from the February 21, 1992, judgment of the United States District Court for the Southern District of New York (Robert W. Sweet, Judge) sentencing defendant Beverly Maier to four years' probation after her conviction of one count of selling heroin. *See United States v. Maier,* 777 F.Supp. 293 (S.D.N.Y.1991). We conclude that a defendant's rehabilitative efforts can, in an appropriate case, warrant a downward departure, and that the findings of the District Court, adequately supported by the record, justify the departure in this case. We therefore affirm.

### Facts

The Government's investigation of Maier disclosed that she had been purchasing distributable quantities of heroin during a two-year period that ended with the arrest of her supplier. Maier pled guilty to one count charging distribution of heroin, and possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C) (1988). At her request, her sentencing was delayed three months to permit her to enter a residential drug treatment program. Thereafter, her sentencing was postponed for more than a year to afford her the opportunity to pursue additional rehabilitation programs. These included a methadone maintenance program at St. Luke's/Roosevelt Hospital in New York City, a three-week in-patient detoxification program in Newark, and treatment by a psychoanalyst specializing in addiction disorders.

The evidence presented to Judge Sweet disclosed that her efforts toward rehabilitation followed an uneven course, not a surprising result for someone with a fourteen-year history of addiction. On the negative side, tests administered by the Pretrial Services Agency disclosed that she had used drugs other than the prescribed dose of methadone on more than half a dozen occasions since her arrest. On the positive side, her therapist reported that after an initial period of receiving a "stabilizing" methadone dose of 60 mg. per day, she had been reduced to 30 mg. per day. Though an attempt to accomplish rapid detoxification at the program in Newark did not succeed, she reentered the St. Luke's/Roosevelt Hospital program, and her therapist anticipated reducing her dosage to 20 mg. per day. He also expressed to the Court his belief "that Beverly genuinely desired to rehabilitate herself."

The therapist did not ignore Maier's lapses into unauthorized drug use, but endeavored to place them in perspective:

[S]uch occurrences are the rule during recovery rather than the exception, and should not be cause for undue alarm. Narcotics addiction is a chronic form of pathology and recovery actually represents an attempt to militate against one's life history and psychological development. Recovery is experienced as an unending feeling of stress, an unnatural refusal to go along with the demands of body and mind. That the recovering addict might momentarily be unable to exert their nascent "good self" is not only easy to appreciate but equally witness to the initial fragility of the process.

The doctor concluded that "[i]f denied methadone at this time and for the foreseeable future until she reaches her goal of becoming methadone-free ..., I truly fear for her life."

At sentencing, Judge Sweet initially determined that the applicable guideline range for the defendant was 51 to 63 months. However, he took note of his departure authority, 18 U.S.C. § 3553(b), as well as the statutory commands that the sentencing judge "shall consider," among other things, "the history and characteristics of the defendant" and "the need for the sentence imposed ... to provide the defendant with needed ... medical care ... in the most effective manner." *Id.*

§ 3553(a)(1), (2)(D). Judge Sweet made the following findings with respect to Maier's rehabilitation:

At the time of her arrest, Maier was injecting herself with .50 grams of heroin daily. Since then, Maier has attempted to rid herself of her drug dependency. She currently is participating in a methadone program at St. Luke's/Roosevelt Hospital and is making progress toward completely freeing herself from the throes of addiction. She also has gone back to school to learn how to become a court reporter and is presently employed.

*United States v. Maier,* 777 F.Supp. at 294. The District Judge also found that "[i]f incarcerated, Maier would be unable to continue methadone treatment in an effective manner." *Id.* He noted that only one federal institution, the Metropolitan Correctional Center in New York City, provides methadone maintenance therapy and that the program there is limited to 7 to 21 days, an interval that had proven ineffective for Maier.

Assessing all of the relevant circumstances, Judge Sweet decided to depart downward from the applicable guideline range and imposed a sentence of four years' probation during which Maier must participate in a community drug treatment program providing methadone maintenance. He specifically noted that revocation of probation would be mandatory for possession of a controlled substance.

## Discussion

The extent to which a drug addict's efforts at rehabilitation may permit a downward departure from the applicable sentencing guideline range has divided the circuits. The Sixth Circuit has ruled that a defendant's efforts "to stay away from drugs" may be considered as a basis for a departure. *See United States v. Maddalena,* 893 F.2d 815, 817–18 (6th Cir.1989). The First, Eleventh, and District of Columbia Circuits have ruled that a defendant's drug rehabilitation efforts, if unusual, can justify a departure. *See United States v. Sklar,* 920 F.2d 107, 116–17 (1st Cir.1990); *United States v. Williams,* 948 F.2d 706,

710–11 & n. 7 (11th Cir.1991); *United States v. Harrington,* 947 F.2d 956, 962 (D.C.Cir.1991).

On the other hand, the Third, Fourth, and Ninth Circuits appear to hold that drug rehabilitation efforts cannot justify a departure. *See United States v. Pharr,* 916 F.2d 129, 132–33 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991); *United States v. Van Dyke,* 895 F.2d 984, 987 (4th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 82 (1990); *United States v. Martin,* 938 F.2d 162, 163–64 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992).

With deference, we conclude that the position opposed to rehabilitation-based departures is not persuasive. In the first place, this position rests in large part on the view, as expressed by the Ninth Circuit, that "rehabilitation is no longer a direct goal of *sentencing.*" *Martin,* 938 F.2d at 163 (emphasis added). That view is simply mistaken. The provision cited by the Ninth Circuit, 28 U.S.C. § 994(k), stands for the significantly different proposition that rehabilitation is not an appropriate ground for *imprisonment:*

The [Sentencing] Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of *imprisonment* for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.

28 U.S.C. § 994(k) (1988) (emphasis added). *See Mistretta v. United States,* 488 U.S. 361, 367, 109 S.Ct. 647, 652, 102 L.Ed.2d 714 (1989) ("[The Sentencing Reform Act] rejects *imprisonment* as a means of promoting rehabilitation....") (emphasis added). Congress wanted to be sure that no defendant was locked up in order to put him in a place where it was hoped that rehabilitation would occur. Incarceration would have to be justified by such traditional penological purposes as incapacitation, general deterrence, specific deterrence, and retribution. But Congress expressed no hostility to rehabilitation as an

objective of *sentencing*, and required sentencing judges to consider, among other things, "provid[ing] the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Since rehabilitation may not be a basis for incarceration but must be considered as a basis for a sentence, Congress must have anticipated that sentencing judges would use their authority, in appropriate cases, to place a defendant on probation in order to enable him to obtain "needed ... medical care, or other correctional treatment in the most effective manner." Indeed, the Sentencing Reform Act explicitly authorizes probation as a permissible form of sentence. *Id.* § 3561.[1]

The courts opposing rehabilitation-based departures have also concluded that such departures are prohibited because they do not involve a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *Id.* § 3553(b). *See, e.g., Martin,* 938 F.2d at 163–64. The Commission, it is claimed, gave adequate consideration to drug rehabilitation (a) in promulgating its policy statement that "[d]rug or alcohol dependence or abuse is not a reason for imposing a sentence below the guidelines," U.S.S.G. § 5H1.4, p.s., *see Martin,* 938 F.2d at 163–64, (b) in recommending in that statement that a drug abuser who is incarcerated should "also be sentenced to supervised release with a requirement that the defendant participate in an appropriate substance abuse program," U.S.S.G. § 5H1.4, p.s., *see Martin,* 938 F.2d at 164, or (c) in providing a two-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, *see United States v. Van Dyke,* 895 F.2d at 986–87. We disagree.

Congress instructed the Commission to consider the relevance to sentencing of a number of characteristics of defendants. 28 U.S.C. § 994(d). Among these are "physical condition, including drug dependence." *Id.* § 994(d)(5). The Commission concluded that drug dependence is not a reason for a downward departure. U.S.S.G. § 5H1.4. Whether or not that flat assertion is "adequate" consideration of the factor it "considers"—drug dependence, it surely is not any consideration, much less adequate consideration, of the factor Judge Sweet relied on in this case—the defendant's effort to end her drug dependence through rehabilitation. The Ninth Circuit contends that the two factors are not distinct because a defendant "could not have achieved 'independence' without 'dependence.'" *Martin,* 938 F.2d at 164. Even if true, the observation is irrelevant to the statutory issue of whether rehabilitation has been adequately considered by the Commission. Congress permitted departures on the basis of aggravating and mitigating circumstances of a kind or degree not adequately considered by the Commission. It did not preclude departures for all factors that are in any way related to some factor that the Commission has considered.

The flaw in the Ninth Circuit's reasoning is revealed by its further argument that "to permit departure for post-arrest drug rehabilitation would provide a benefit to defendants with a drug problem that is unavailable to defendants without one." *Martin,* 938 F.2d at 164. By that logic, there could be no departures for cooperation: such departures provide a benefit to defendants so heavily involved in crime that they have knowledge useful to prosecutors, yet that benefit is unavailable to

---

**1.** Congressional dissatisfaction with the "outmoded rehabilitation model," *see* S.Rep. No. 225, 98th Cong., 1st Sess. 38 (1983), U.S.Code Cong. & Admin.News 1984, pp. 3182, 3221, was based on the vices of the indeterminate sentence regime of prior law, under which the effective time of incarceration was determined, not by the sentencing judge, but by the Parole Commission endeavoring to decide when the prisoner had been "rehabilitated." The resulting disparity of time served and the uncertainty of prison terms led to the abolition of parole. *See Mistretta v. United States,* 488 U.S. at 366, 109 S.Ct. at 651. It would be a sad irony if congressional dissatisfaction with the inability of the Parole Commission to determine the point during a prison term at which rehabilitation has occurred should be mistakenly used to bar sentencing judges from constructing probation sentences that offer some prospect that rehabilitation will occur.

those so peripherally involved in crime as to lack useful knowledge. Congress and the Commission favor cooperation departures. *See* 28 U.S.C. § 994(n); U.S.S.G. § 5K1.1, p.s. Though the commission of crimes is not a reason for a departure, the related awareness of crime and willingness to disclose it is such a reason. Similarly, though drug dependence is not a reason for a departure, the related awareness of one's circumstances and the demonstrated willingness to act to achieve rehabilitation, thereby benefiting the individual and society, is such a reason.

Nor can the Commission's recommendation that supervised release for drug abusers include participation in a substance abuse program be considered the "adequate consideration" of drug rehabilitation that precludes this factor as a reason for departures. In making this common sense recommendation, the Commission has not purported to have determined that participation in a drug abuse program may not be considered a mitigating circumstance, nor has it assigned any particular mitigating value to that circumstance that enters into a guideline calculation. *Cf., e.g.,* U.S.S.G. § 3B1.2 (2–4 level reduction for mitigating role in offense).

Finally, we reject the argument that the Commission has adequately considered drug rehabilitation by permitting a two-level reduction in the offense level for the defendant's acceptance of responsibility for his criminal conduct. That reduction, as everyone knows, was the Commission's limited authorization to sentencing judges to continue the age-old practice of affording a defendant some sentence reduction for pleading guilty. A guilty plea does not guarantee the two-level reduction as a matter of right, U.S.S.G. § 3E1.1(c), and the reduction may be awarded for other conduct that indicates an acknowledgement of responsibility for the offense, *e.g.,* withdrawal from criminal conduct, prompt restitution, full disclosure of involvement to authorities, prompt surrender, and assisting the authorities to discover fruits or instrumentalities of the offense. *Id.* § 3E1.1, comment. (n. 1(a)–(e)). But the conduct that indicates acceptance of re-

sponsibility "for [a defendant's] criminal conduct" must relate directly to the offense. To permit section 3E1.1 to serve as the Commission's adequate consideration of all mitigating "post offense conduct," *see Van Dyke,* 895 F.2d at 986, thereby precluding departures regardless of anything constructive that the defendant might do after his arrest that benefits himself, his family, or his community, undermines the statutory standard for departures, 18 U.S.C. § 3553(b), as well as the statutory requirement to consider the "characteristics of the defendant," *id.* § 3553(a)(1).

We therefore conclude that neither section 5H1.4 nor section 3E1.1 discloses the Commission's adequate consideration of drug rehabilitation that would preclude this factor as an available basis for departure. Indeed, if we were to construe the Guidelines to have such an effect, a substantial question would arise as to whether a Commission attempt to bar sentencing judges from considering this circumstance would contravene the congressional directive that judges "shall consider ... the need for the sentence imposed ... to provide the defendant with needed ... medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

■ In approving drug rehabilitation as a permissible ground for a departure, we recognize that in this, as in all Guidelines cases, there is a line to be observed between a faithful endeavor to apply the statutory sentencing requirements and a deliberate, though well-intentioned, effort to circumvent them. We are satisfied that in this case, Judge Sweet's sentence is on the valid side of that line. He has not departed simply because the defendant has entered a rehabilitation program. Such programs, easily entered but difficult to sustain, cannot be permitted to become an automatic ground for obtaining a downward departure. Instead, the District Judge has conscientiously examined all of the pertinent circumstances, including the nature of the defendant's addiction, the characteristics of the program she has entered, the progress she is making, the objective indications of her determination to rehabilitate herself,

and her therapist's assessment of her progress toward rehabilitation and the hazards of interrupting that progress. We apply a clearly erroneous standard to the District Court's findings, *see United States v. Pimentel,* 932 F.2d 1029, 1031 (2d Cir.1991), and conclude that all of the findings are supportable on this record. We also conclude that the departure is not "unreasonable," 18 U.S.C. § 3742(e)(3), which is the ultimate standard guiding our review of departures, *see United States v. Palta,* 880 F.2d 636, 639 (2d Cir.1989); *United States v. Correa–Vargas,* 860 F.2d 35, 36–37 (2d Cir.1988). In reaching this conclusion, we note that Congress has explicitly required a reviewing court, in determining whether a departure is "unreasonable," to "hav[e] regard for—(A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title [18 U.S.C. §§ 3551–3586 (factors listed in section 3553(a))]; and (B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c)." 18 U.S.C. § 3742(e)(3).

The judgment of the District Court is affirmed.