990 F.2d 1377
 301 U.S.App.D.C. 107
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America,
v.
Charlene D. HOLLOWAY, Appellant.
 No. 92-3126.
 United States Court of Appeals, District of Columbia Circuit.
 March 22, 1993.
 
 Before: MIKVA, Chief Judge; WALD and BUCKLEY, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on appeal of the defendant from the judgment of the District Court, and it was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that in No. 92-3126, the judgment is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely-filed petition for rehearing. See D.C.Cir. Rule 15.
 
 MEMORANDUM
 
 4
 Charlene Holloway appeals her conviction for unlawfully maintaining premises to manufacture, distribute, store or use a controlled substance on the following three grounds: (1) the district court abused its discretion and committed constitutional error by excluding a juror; (2) the district court committed plain error by informing the prospective jury panel that the case would not take long to decide; (3) the district court erred in denying Holloway's request for a downward departure based upon her post-conviction rehabilitation. As explained below, we reject each of these contentions and affirm the conviction and sentence.
 
 I. BACKGROUND
 
 5
 On March 18, 1991, a search warrant was executed at the home of Ms. Holloway, who was the sole occupant at the time. The police found 11 grams of crack cocaine, two scales, marijuana, narcotics paraphernalia, $2,500 in cash, ammunition, and a loaded .25 caliber pistol. Holloway was indicted for possession with intent to distribute 5 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii); possession of a firearm during the commission of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1); and unlawful maintenance of premises to manufacture, distribute, store or use a controlled substance in violation of 21 U.S.C. § 856(a). A jury trial began on June 17, 1991.
 
 
 6
 During its examination of the venire, the district court engaged in a lengthy colloquy with one of the prospective jurors who asked to be excused because of concerns about his employment. The discussion concluded:
 
 
 7
 Court: If you're here for the two-and-a-half days, can you put that--I don't want to make light of it--that business problem aside and render a fair and impartial verdict based solely on the evidence you see and hear in this courtroom, as well as accept the law as the court gives it to you from time to time? Can you do that?
 
 
 8
 Hearns: Yes, I can, for two-and-a-half days.
 
 
 9
 Court: Thank you very much. I make a promise to you: That's all you're going to have to do. I'll get these lawyers and their witnesses in and out of here and get it into your hands, and it won't take you very long after you get it to decide it, either, because you're all smart people, every one of you.
 
 
 10
 The defense did not object to these comments.
 
 
 11
 Next, during voir dire, the panel was asked whether they had experienced any "favorable or unfavorable contact with the police." Ms. Francine Johnson informed the court that she had witnessed the Maryland police beat a friend of hers in a parking lot late one night. The court then inquired:
 
 
 12
 Court: Well, I'm sure those experiences are indelibly impressed in your mind, are they not?
 
 
 13
 Johnson: Well, I'm like, I don't know why they were out there. I mean, you know, they've got no business out there at that time of night, you know, because they're supposed to be at home, but I was working.
 
 
 14
 Court: .... But if you've had those experiences by the Police Department, that's pretty unfavorable, isn't it?
 
 
 15
 Johnson: Well, they did it.
 
 
 16
 Court: It's a pretty unfavorable thing for a person to witness the police doing those kinds of things; isn't that right?
 
 
 17
 Johnson: Well, that's life, Your Honor. That happens.
 
 
 18
 Court: I hope all policemen don't do that.
 
 
 19
 Johnson: I'm sure some of them don't, but then you do have that percentage that does, so.
 
 
 20
 Court: Do you think you might be thinking about that when you judge the credibility of a police officer as a witness?
 
 
 21
 Johnson: No.
 
 
 22
 Court: Why?
 
 
 23
 Johnson: Because I don't know him.
 
 
 24
 Neither counsel exercised a peremptory challenge to strike Johnson, and both attorneys expressed their satisfaction with the jury. However, on its own motion, the court removed Johnson from the panel, questioning whether "somebody who witnesses and claims the police used excessive force can be a fair and impartial juror, regardless of what they say." The court explained:
 
 
 25
 [T]he court observed her very carefully when she was here at the bench, and her responses to the questions about whether she could be fair and impartial were tentative at best. She indicated she harbored resentment towards the police, albeit those in Prince George's County, but they're no different from the police in any other jurisdiction.
 
 
 26
 ....
 
 
 27
 So, therefore, in the exercise of the court's discretion, pursuant to its supervisory power and inherent powers, I'm going to direct the clerk to strike her from the panel.
 
 
 28
 Holloway was acquitted of the first two counts but convicted of the third count of maintaining her home for the storage or distribution of a controlled substance. Sentencing was continued so that she could enter a residential drug treatment program, and on May 1, 1992, after successfully completing the program, Holloway was sentenced to 15 months in prison to be followed by two years supervised release.
 
 II. ANALYSIS
 A. Exclusion of Juror
 
 29
 Holloway argues that her 6th Amendment rights were violated because the district court, in sua sponte striking Ms. Johnson, impermissibly excluded from the jury the "distinctive" category of persons who have witnessed police misconduct. See Duren v. Missouri, 439 U.S. 357, 364 (1979). However, even assuming that Holloway has identified a "distinctive" group for Sixth Amendment purposes, see Lockhart v. McCree, 476 U.S. 162, 174 (1986) (explaining that "groups defined solely in terms of shared attitudes that would prevent or substantially impair members of the group from performing one of their duties as jurors ... are not 'distinctive groups' for fair-cross-section purposes"), we find it altogether clear from the record that the district court did not remove Johnson on the basis of her status as a member of the group of persons who have witnessed police conduct, but instead was simply exercising its considerable discretion to find that this particular prospective juror could not serve fairly and impartially. See United States v. Haldeman, 559 F.2d 31, 64-65 (D.C.Cir.1976), cert. denied, 431 U.S. 933 (1977). The district court was not obligated to take Johnson at her word, but instead, appropriately judged the credibility of her answers. See Mu'min v. Virginia, 111 S.Ct. 1899, 1905 (1991) (trial court must decide at end of questioning "is this juror to be believed when he says he has not formed an opinion about the case"). After engaging in an extended discussion with Johnson, the district court observed that Johnson's answers were "tentative at best" and that she "harbored resentment towards the police." We cannot say that these conclusions, based largely on demeanor evidence, were clearly erroneous.
 
 
 30
 B. Court's Statement Regarding Time to Decide Case
 
 
 31
 Next, Holloway argues that the district court improperly invaded the province of the jury and committed constitutional error by informing the jurors that the case would take only two-and-a-half days to decide. Again, we believe Holloway has misconstrued the facts. The statement in question, which Holloway admits was delivered "jocularly" see Appellant's Brief at 33, followed a lengthy colloquy during which the district judge attempted to convince a prospective juror that he need not be excused from the jury after three consecutive jurors had been excused for job-related reasons. Since defense counsel did not object at the time, we review the statement under the plain error standard, and, considering the dialogue as a whole, conclude that the district court did not commit plain error. See United States v. Frady, 456 U.S. 152, 162-63 (1982). In stating that it would not take the jury very long to decide the case, the district court did not express any view of the evidence or give any indication which side it thought was aided by the anticipated brevity of the trial. Instead, the court's comment, made in advance of the empaneling of the jury and the presentation of evidence, seems more fairly characterized as praise of the jurors' intelligence rather than coercion of their deliberation. In sum, while statements from the bench regarding the expected duration of the jury's deliberations are certainly to be disfavored, we do not believe that in this case the district court's remark amounted to plain error. See United States v. Young, 470 U.S. 1, 15 (1985) (defining plain errors as "particularly egregious" errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings") (internal quotations omitted).
 
 C. Downward Departure
 
 32
 In calculating Holloway's sentence under the guidelines, the district court determined that her offense level was 16 but that she was entitled to a two point reduction for acceptance of responsibility. With an offense level of 14, the district court determined the appropriate sentencing range to be 15-21 months and sentenced her to the bottom of that range. Holloway then sought a downward departure based upon a letter describing her successful completion, four months after the trial, of a drug treatment program. The district court refused, reasoning:
 
 
 33
 The court cannot depart below the minimal level of the 15 months, based on the evidence presented to the court in the form of this one letter and representations of counsel and Ms. Holloway. There is no basis to do that under Harrington or any other authority that the court is aware of....
 
 
 34
 On appeal, Holloway argues that the district court's refusal to grant a downward departure was based upon the court's incorrect interpretation of the guidelines that it lacked authority to depart on the basis of her post-trial efforts at rehabilitation.
 
 
 35
 Whether rehabilitation can warrant a downward departure has been the subject of considerable conflict among the circuits. Some circuits have found that rehabilitation, regardless of whether undertaken pre- or post-trial, can never justify such a reduction. United States v. Anders, 956 F.2d 907, 911 (9th Cir.1992); United States v. Martin, 938 F.2d 162, 163-64 (9th Cir.1991), cert. denied, 112 S.Ct. 1679 (1992); United States v. Pharr, 916 F.2d 129, 132-33 (3d Cir.1990), cert. denied, 111 S.Ct. 2274 (1991); United States v. Van Dyke, 895 F.2d 984, 987 (4th Cir.), cert. denied, 111 S.Ct. 112 (1990). Other circuits have held that rehabilitation may support a downward departure, United States v. Williams, 948 F.2d 706, 710-11 & n. 7 (11th Cir.1991); United States v. Sklar, 920 F.2d 107, 116-17 (1st Cir.1990); United States v. Maddalena, 893 F.2d 815, 817-18 (6th Cir.1989), and at least one circuit has specifically made clear that post-conviction reformation may, in appropriate cases, warrant a departure, see United States v. Maier, 975 F.2d, 944, 945-47 (2d Cir.1992) ("defendant's effort to end her drug dependence through" participation in various drug treatment programs following guilty plea for heroin trafficking warranted downward departure).
 
 
 36
 As Holloway correctly observes, we have sided with those circuits which permit downward departures for extraordinary rehabilitation efforts, see United States v. Harrington, 947 F.2d 956, 962 (D.C.Cir.1991), and have never foreclosed the possibility of a downward departure for unusual post-conviction reformation. By stating in Harrington that "a defendant's pretrial behavior, not his post-trial confession or conversion, is the prime indicator of his acceptance of responsibility," 947 F.2d at 963 (emphasis in original), we did suggest that an acceptance of responsibility reduction under § 3E1.1 for rehabilitation efforts should be limited to pre-trial endeavors. That conclusion, however, in no way implies that all downward departures must be limited to pretrial rehabilitation; such departures need not be founded solely upon the notion that a defendant's attempts at rehabilitation manifest an acceptance of responsibility for criminal conduct. The Second Circuit has observed, "awareness of one's circumstances and the demonstrated willingness to act to achieve rehabilitation, thereby benefiting the individual and society, is ... a reason" for a departure. Maier, 975 F.2d at 948. For purposes of this case, however, it suffices to reiterate our conclusion in Harrington that only on rare occasions will a defendant's extraordinary efforts at rehabilitation warrant a downward departure. 947 F.2d at 962.
 
 
 37
 For in Holloway's case, the district court's denial of her request for a sentence reduction was not based upon the misperception that it lacked the general authority to depart downward for post-conviction rehabilitation. Rather, the district court held that, based on the single letter regarding the drug treatment program and Holloway's statement in court, the rehabilitation was not sufficiently unusual to overcome the standard set forth in Harrington. In other words, we think it clear that the district court was engaging in a paradigmatic, and entirely reasonable, application of the appropriate legal standard to the facts in the case. Because the district court's conclusion was based upon a reasonable view of the evidence, rather than a mistake of law or incorrect application of the guidelines, the court's discretionary refusal to depart downward is not reviewable on appeal. United States v. Jamison, 934 F.2d 371, 372 (D.C.Cir.1991); United States v. Ortez, 902 F.2d 61, 63-64 (D.C.Cir1990).
 
 
 38
 We affirm the conviction and sentence.