**UNITED STATES of America, Plaintiff,**

v.

**Elroy ALLEN, Defendant.**

**No. 88–CR–20010–BC.**

United States District Court, E.D. Michigan, N.D.

April 13, 1988.

Janet L. Parker, Asst. U.S. Atty., Bay City, Mich., for plaintiff.

Joseph K. Sheeran, Bay City, Mich., for defendant.

**MEMORANDUM OPINION**

CHURCHILL, District Judge.

The indictment in this case charges the defendant with alteration of United States currency in violation of 18 U.S.C. § 472. His motion to dismiss the indictment for violation of a pretrial diversion agreement was taken under advisement at the conclusion of a testimonial hearing on April 7, 1988.

The chronology of events leading to the defendant's motion is as follows. The government was in possession of evidence indicating that, in May of 1986, the defendant altered a one dollar bill to appear as a twenty dollar bill and attempted to pass it as a twenty. Under applicable U.S. Attor-

ney guidelines and procedure, the defendant was eligible to participate in a program referred to in the Eastern District of Michigan as Pretrial Diversion.[1]

On August 28, 1986, Assistant U.S. Attorney Parker wrote to the defendant informing him of his eligibility for the program. The letter contained the following sentences:

If you satisfactorily fulfill the conditions and terms of your program, you will not be prosecuted and you will not have a permanent criminal record. If you violate the conditions of your program, however, you may be removed from the pretrial diversion program, and the prosecution will be resumed.

On January 28, 1987, a document entitled "Agreement for Pre–Trial Diversion" was signed by the defendant, Pretrial Services Officer Van Tiem and Assistant U.S. Attorney Parker. The diversion agreement makes specific reference to the underlying offense, and provides that prosecution would be deferred for 12 months from January 28, 1987 if the defendant abided by the conditions and requirements of the agreement.

The agreement contains the following two paragraphs which are quoted in full.

Should you violate the conditions of this Agreement, the United States Attorney may revoke or modify any conditions of this pre-trial diversion program or change the period of supervision, which shall in no case exceed 18 months. The United States Attorney may release you from supervision at any time. The United States Attorney may at any time within the period of your supervision initiate prosecution for this offense should you violate the conditions of this Agreement. In this case he will furnish you with notice specifying the conditions of the Agreement which you have violated.

After successfully completing your diversion program and fulfilling all the terms and conditions of the Agreement, no prosecution for the offense set out on page 1 of this Agreement will be instituted in this District, and the charges against you, if any, will be dismissed.

Pretrial Services Officer Rotunno wrote to Assistant U.S. Attorney Parker on January 13, 1988 to inform Parker that the defendant had reported as directed until July, 1987, at which time he moved to Maryland without prior approval from the Pretrial Services Office. Rotunno indicated that the defendant was gainfully employed in Maryland and that there was no record of arrest, conviction or warrant since the signing of the agreement. She stated that the Pretrial Services Agency was closing out its case and was terminating him with certification.[2]

On February 3, 1988, Assistant U.S. Attorney Parker wrote to the defendant at his Maryland address to notify him that, because he had breached the pretrial diversion agreement, the diversion term was being extended six months. Parker further advised the defendant that, if by February 16, 1988 she did not receive confirmation from the U.S. Pretrial Services Office

---

1. The program in the Eastern District of Michigan is administered pursuant to an agreement between the Chief of Pretrial Services and the United States Attorney under the authority of 18 U.S.C. § 3154(10). Implied statutory authority for the program appears as a part of the Speedy Trial Act at 18 U.S.C. § 3161(h)(2). Similar programs are sometimes referred to as pretrial intervention and deferred prosecution. For a discussion of the legal aspects of such programs, see **W. LaFave & J. Israel, Criminal Procedure** §§ 13.1(d), –.6 (West 1984 & Supp.1987).

Notwithstanding some technical defects in the program suggested herein, it is my observation that the program is well and fairly administered in this district and that, on balance, its objectives are achieved. It not only preserves prosecutorial and judicial resources, but also protects many first-time offenders from obtaining criminal records.

2. Under applicable written procedures, she was in effect recommending certification that the defendant substantially complied with the terms of the diversion agreement. This type of termination is distinguishable from two other types of termination—termination without certification and termination or extension of diversion in view of potentially-impending prosecution. The rights of the parties to this controversy are not affected by Rotunno's recommendation. The ultimate determination of whether to prosecute based on technical noncompliance by the divertee rests, as it must, with the United States Attorney. The procedures in place, however, provide inadequate time for appropriate prosecutorial action when the Assistant United States Attorney disagrees with the recommendation or

in Maryland that he had established a reporting schedule, she would initiate a felony prosecution against him. On February 23, 1988, an indictment was returned. On March 24, 1988, the defendant's attorney filed a motion to dismiss the indictment claiming prosecution was barred because the 12–month diversion period expired "without [the defendant] being notified by the United States Attorney of any violation of the agreement, without being charged with the offense, and without having the diversion period extended." The government filed a response.

The rights of the government and of the defendant in this matter flow only from the operative language of the agreement for pretrial diversion and from the August 28, 1986 letter. *See Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed. 2d 813 (1983). The defendant does not claim that he was entitled to a pre-indictment hearing with respect to violation of the diversion agreement, or even that he did not conduct himself in a manner that would justify a finding that he violated the agreement. The case law concerning the right to a hearing, the nature of the hearing and the timing of the hearing, however, are instructive as to the nature of the rights of the government and of the defendant that are created by a pretrial diversion agreement.

In the leading case of *United States v. Hicks,* 693 F.2d 32 (5th Cir.1982), *cert. denied,* 459 U.S. 1220, 103 S.Ct. 1226, 75 L.Ed.2d 461 (1983), the Fifth Circuit determined that a pretrial diversion agreement creates rights enforceable by the court. *Id.* at 33–34. The *Hicks* court affirmed the trial court's finding that the defendant violated the pretrial diversion agreement and concluded that the speedy trial waiver contained therein was enforceable against the defendant.[3] *Id.* at 34–35.

In *Washington v. Marino,* 100 Wash.2d 719, 674 P.2d 171 (1984), the Supreme Court of Washington, citing *Hicks* and myriad other authorities, ruled that in a post-indictment hearing the state has the burden of proving by a preponderance of the evidence that the defendant violated a deferred prosecution or pretrial diversion contract.

■■■ *United States v. Gogarty,* 533 F.2d 93 (2d Cir.1976), and *United States v. Garcia,* 519 F.2d 1343 (9th Cir.1975), both recognize that a defendant who fulfills the terms of a pretrial diversion agreement earns the right not to be prosecuted. *See also Florida v. Gorayeb,* 510 So.2d 1168 (1987) (District Court of Appeal of Florida recognized the right and suggested that the government's burden requires clear and convincing evidence). Based on the foregoing authority, the Court concludes that: (1) a divertee has the right not to be prosecuted contrary to the terms of a pretrial diversion agreement; (2) the right may be in the nature of a due process right;[4] (3) the defendant does not have a right to a pre-indictment hearing; and (4) in a post-indictment hearing, on motion by the defendant, when the defendant establishes the existence of a pretrial diversion contract, and when the defendant has not been afforded a pre-indictment administrative hearing, the government has the burden of proof that prosecution of the defendant does not violate the conditional promise not to prosecute contained in the agreement.

■ The argument that the government must take some positive action to preserve the right of prosecution within the one-year contract period is as follows. The letter of August 28, 1986 strongly suggests that the defendant must be removed from the program for prosecution to be resumed. One must be in something to be removed from it. The contract itself says that the United States may at any time within the period of supervision initiate prosecution upon a violation of the conditions. Furthermore, the contract gives the government the unrestricted right to extend the contract period for an additional six months. One purpose

when there is a serious violation near the conclusion of the one-year period.

**3.** In the only Sixth Circuit case dealing with diversion that the Court has found, the Sixth Circuit distinguished *Hicks* in holding that a defendant does not have a right to pretrial diversion. *See United States v. Nathan,* 816 F.2d 230, 234 (6th Cir.1987).

**4.** *See, e.g., Marino,* 100 Wash.2d at 721–23, 674 P.2d at 173.

of an extension could be to give the divertee an additional opportunity to demonstrate a willingness to comply with the agreement's conditions. It also affords the government an additional period of time to terminate the agreement for noncompliance and to initiate prosecution. There is no language in the contract from which the Court can infer the right to initiate prosecution after the one-year period has expired in the absence of timely extension.

The Court has found only two reported cases raising an argument that prosecution violated a diversion agreement because it was not timely. *See United States v. Gogarty,* 533 F.2d 93 (2d Cir.1976); *United States v. Garcia,* 519 F.2d 1343 (9th Cir. 1975). Factually, *Gogarty* is similar to the case before the Court. In *Gogarty,* the contract contained similar language that upon breach of conditions, prosecution could be initiated within the 12–month period of supervision. *Gogarty,* 533 F.2d at 94. Applying the agreement's language, the Second Circuit affirmed a conviction based upon a prosecution initiated after the 12–month contract period. *Gogarty,* however, differs from the case at bar in one major respect. In *Gogarty,* the defendant was obligated to produce a certificate of compliance with a specific alcoholic treatment program after the contract period had expired. *Id.* at 95. From this, the Second Circuit necessarily inferred that the decision to prosecute did not have to be made within the 12–month period. *Id.* Therefore, prosecution three months after the end of the diversion period did not violate the agreement.

*Garcia* is a different kind of a case involving deferral of prosecution conditioned upon the defendant delivering another drug offender to law enforcement officials. *Garcia* is persuasive authority for two relevant propositions, however. First, the diversion contract, if ambiguous, should be construed against its draftsman. *Garcia,* 519 F.2d at 1344. *Garcia* also intimates that prosecution is initiated when evidence is presented to the Grand Jury. *Id.*

It is the opinion of the Court that, in this case, the February 3, 1988 letter of extension was a nullity. The prosecution was not initiated within the time period specified in the agreement, and no timely extension was effectuated. The prosecution was, therefore, inconsistent with the terms of the agreement. An order will be entered granting the defendant's motion to dismiss.