UNITED STATES of America,

v.

Rekeya FLOWERS, Defendant.

No. 96–CR–1064 (02)(JBW).

United States District Court,
E.D. New York.

Oct. 28, 1997.

Zachary W. Carter, U.S. Atty., Eastern Dist. of New York, Brooklyn, NY by Michael H. Warren, for United States of America.

Kwasnik & Mendez, New York City by Richard E. Kwasnik, for Rekeya Flowers.

MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge.

I. Introduction ................................................................160

II. Facts ......................................................................160

A.  Defendant's Background and Individual Circumstances.....................160
B.  Offense ...............................................................160
C.  Procedural History ....................................................160

III.  Law .................................................................161
A.  History and Use of Deferred Prosecution................................161
1.  New York State's Adjournment in Contemplation of Dismissal............162
2.  Federal System's "Brooklyn Plan" ....................................163
3.  Goals and Benefits of Deferred Prosecution ..........................164
B.  Pre–Sentence Rehabilitation as a Grounds for Departure Under the
Guidelines.............................................................165
C.  Delay of Sentencing Pursuant to Federal Rule of Criminal Procedure 32.....167
1.  Text and History of Federal Rule of Criminal Procedure 32 .............167
2.  Case Law Interpretation of Federal Rule of Criminal Procedure 32.....170
D.  One Time Sentencing Under Federal Rule of Criminal Procedure 35 .........171

IV.  Application of Law to Facts .........................................172

V.  Conclusion ...........................................................173

## I.  Introduction

The question posed as one of first impression is whether under the Guidelines the court may defer sentence to assure itself that defendant has been rehabilitated. The answer is yes. Defendant's request for adjournment of sentencing is granted. The delay is intended to allow the defendant further time to demonstrate rehabilitation prior to imposition of sentence. Sentencing is deferred for one year. In the interim, defendant will remain under the close supervision of the court's Pre–Trial Services Agency.

## II.  Facts

### A.  Defendant's Background and Individual Circumstances

Defendant, Rekeya Flowers, is a twenty-one year old African–American woman. She is slight in build, shy and timid in demeanor. Born in Brooklyn, she was the youngest of her parents' four children. When she was two her father, an alcoholic, abandoned the family. Her mother, who worked as a repair dispatch clerk for a local telephone company, was left to raise the family on her own.

Ms. Flowers is also a single mother. She became pregnant and gave birth while a teenager in school. Defendant and her four year old daughter live in defendant's mother's home—a two–bedroom apartment in the East New York section of Brooklyn.

While a mother, Ms. Flowers managed to graduate from high school and complete some courses at college. She left college when offered a full–time job. The job did not last long. Until recently, defendant worked at many short–term, low–paying positions with little chance for advancement. In May of 1997 she obtained employment as a temporary worker with a reputable organization making better wages than she ever has. That job promises to turn into a well–paid permanent position with the opportunity for advancement.

The father of defendant's child is also only twenty–one years old. It is said that he is not mature enough to care for his daughter. Employed as a temporary clerical worker, he does not contribute financial support. His interactions with his daughter involve occasional visits and holiday gifts.

The child is friendly, bright, inquisitive, healthy, and well–cared for. The family agrees that defendant, the child's primary care–giver, is a good mother.

### B.  Offense

On November 2, 1996, at a time when defendant was moving from one low paying job to the next, she agreed to act as a drug courier in exchange for money. A friend of a friend, a man by the name of "Phillip," asked defendant to travel to Barbados to bring back some drugs. She told him she would. Provided with an airline ticket and money, defendant was taken by Phillip to Kennedy International Airport. Before arriving at the

airport, though, Phillip stopped along the way to pick up another woman in Queens. That woman was Dawn White. Ms. White, it was explained to Ms. Flowers, would also be acting as a drug courier for Phillip.

Ms. White and Ms. Flowers, who had never met before, were instructed to travel to Barbados together and stay in the same hotel room. They did. After several days the two women were provided with luggage to take back to the United States for Phillip. In the luggage were hand lotion and shampoo containers filled with cocaine. Ms. Flowers knew that the narcotics were in her suitcase. She was told to hand the luggage off to an unidentified person once she got back to Kennedy Airport.

Upon arriving back in the states, the luggage was checked as part of a routine Customs examination. The narcotics were discovered. The total weight of the cocaine was 3.77 kilograms. It was between 70 and 72% pure. Defendant Flowers and her companion, Ms. White, were arrested and indicted.

This is defendant's first conviction—she has no prior criminal history. She is not a drug user. She does not drink. While under the supervision of the Pre–Trial Services Agency she has complied with all rules, regulations, and conditions.

## C. Procedural History

On May 2, 1997 defendant pled guilty before the Magistrate Judge to one count of conspiring to import, distribute, and possess with intent to distribute cocaine in violation of sections 952(a), 960(b)(3), 841(b)(1)(C), and 846 of Title 21 of the United States Code.

When in the courtroom defendant's demeanor has been appropriate. She is extremely nervous and soft–spoken. When addressing the court, defendant is hesitant and thoughtful in her responses. She appears to be somewhat naive, a person open to suggestion.

On September 18, 1997 defendant, accompanied by her attorney, appeared for sentencing. Because of the amount of drugs involved, even after a reduction in the guidelines offense level for acceptance of responsibility, minimal participation, and application of the "safety valve" provision, defendant is subject to a total offense level of twenty–one, with a prison sentence of between thirty–seven and forty–six months, plus fines, special assessments, and a long period of supervised release.

Such a lengthy prison term would separate defendant from her daughter during some of the most important years of the child's life. Rehabilitation seems to be well under way. Further time to determine its extent is required before deciding on whether a downward departure to a lesser term of imprisonment or to probation with conditions is appropriate.

## III. Law

■ Adjournment of sentence is permitted. Deferring final adjudication in a criminal proceeding to allow a defendant time needed to improve her circumstances is not new to the law. Reasonable delays may help ensure that the sentence fits both the crime and the circumstances of the defendant and her family.

### A. History and Use of Deferred Prosecution

In an effort to protect the public by effectively preventing crime, justly dispensing punishment, and successfully rehabilitating those who have committed illegal acts, innovative alternative sentencing plans have been developed in many courts across the country. *See ABA Standards for Criminal Justice Sentencing* xix (3rd ed.1994) (encouraging the use of "alternative sanctions" instead of "total confinement in prisons and jails or probation" to "create criminal justice systems that are more flexible, responsive, and effective"); Andrew R. Klein, *Alternative Sentencing: A Practitioner's Guide* 87–136 (examples of alternative sentencing in a wide range of cases); *cf.* Arthur W. Campbell, *Law of Sentencing* 40 (2d ed.1992) ("many citizens [wrongly believe] a criminal sentence means simply 'punishment' or at least incarceration"); Julian V. Roberts, *American Attitudes About Punishment: Myth and Reality, in Sentencing Reform in Overcrowded Times* 250, 251 (Michael Tonry & Kathleen Hatlestad ed., 1997) (same). A number of

these innovations have been developed by federal courts to avoid unnecessarily draconian prison sentences under the guidelines. *Cf.* Molly Treadway Johnson & Scott A. Gilbert, *The U.S. Sentencing Guidelines: Results of the Federal Judicial Center's 1996 Survey, Report to the Committee on Criminal Law of the Judicial Conference of the United States* 15 (Federal Judicial Center ed., 1997) (many judges and probation officers believe that alternatives to incarceration should be used more often under the guidelines); Nicholas R. Turner, et al., *The Cost of Avoiding Injustice by Guideline Circumvention,* 9 Fed. Sent. Rep. 298 (May/June 1997) (manipulation of guidelines in order to avoid injustice at sentencing).

While probation was the "original," and probably is the most often used form of "alternative" sentencing, Andrew R. Klein, *Alternative Sentencing* 61 (1988), house arrest and electronic monitoring are now often imposed in lieu of incarceration. *See* U.S.S.G. § 5F1.2; *see also* Steven J. Rackmill, *An Analysis of Home Confinement as a Sanction, in Criminal Justice: Concepts and Issues* 229, 229–239 (Chris W. Eskridge, ed., 2d ed.1997) (discussion of use of home confinement and electronic monitoring); Paul J. Hofer & Barbara S. Meierhoefer, *Home Confinement: An Evolving Sanction in the Federal Criminal Justice System* (Federal Judicial Center ed., 1987) (home confinement as an alternative to traditional imprisonment). Terms of community service are also increasingly being imposed by sentencing judges. *See* U.S.S.G. § 5F1.3; *see also* Malcolm M. Feeley, Richard Berk, and Alec Campbell, *Between Two Extremes: An Examination of the Effectiveness of Community Service Orders and Their Implications for the United States Sentencing Guidelines,* 66 S. Cal. L.Rev. 155 (1992). Military–type "shock incarceration" boot camps are utilized to sharply reduce prison terms. *See* U.S.S.G. § 5F1.7; *see also* Doris Layton MacKenzie, *Results of a Multistate Study of Boot Camp Prisons, in Criminal Justice: Concepts and Issues,* 240, 240–247 (1997).

Another innovation known as pre–trial diversion or deferred prosecution, has also become popular in recent decades, though prosecutors have informally and effectively utilized this technique for many years. *See* Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 13.6, at 217 (1984) ("For years, individual prosecutors have in a very informal ... way permitted diversion ... agreeing not to proceed with prosecution of a defendant if he in return makes restitution to the victim or does some other act."). This alternative does not involve actual conviction and sentencing but is a middle ground between formal adjudication and outright dismissal of a charge. Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 13.1, at 158–59 (1984). The plan diverts defendants away from the criminal justice system, providing them with the opportunity to have their case dismissed. *See* Note, *Pretrial Diversion from the Criminal Process,* 83 Yale L.J. 827, 827 (1974). There is, however, a price for the dismissal, a price that differs from program to program, but is far less than a conviction, a criminal record, and a lengthy prison term. Generally it involves a defendant rehabilitating herself by meeting a series of conditions and maintaining a clean record for a substantial period of time. *See* Note, *Pretrial Diversion from the Criminal Process,* 83 Yale L.J. 827, 827 (1974); *see also* Debra T. Landis, *Pretrial Diversion: Statute Or Court Rule Authorizing Suspension Or Dismissal Of Criminal Prosecution On Defendant's Consent To Noncriminal Alternative,* 4 A.L.R.4th 147–182 (1981 & Supp. 1997) (overview of pretrial diversion programs of several jurisdictions). Used both in the federal and several state court systems, two of the most well–known versions of diversion and their history are discussed below.

### 1. New York State's Adjournment in Contemplation of Dismissal

In the state of New York the process of deferring prosecution in the hope of resolving a criminal matter short of actual adjudication is referred to as an "adjournment in contemplation of dismissal" or an ACD. N.Y.Crim. P. Law § 170.55(1) (McKinney 1993 & Supp.1997). A legislatively created mechanism, ACD's became available by statute in 1971. *See People v. Glaubman,* 68 Misc.2d 698, 327 N.Y.S.2d 186, 187 (N.Y.Village Ct.1971) (court's ACD discretion not

utilized in simple traffic informations). They are an offspring of a practice used previously by Assistant District Attorneys in New York known as a D.O.R. or "discharge on own recognizance." N.Y.Crim. P. Law § 170.55 (McKinney 1993) (Practice Commentaries); *see also People v. Hurt,* 78 Misc.2d 43, 355 N.Y.S.2d 728 (N.Y.City Crim.Ct.1974) (reinstatement of case upon motion of district attorney; discussion of development of ACD from D.O.R.). D.O.R.'s were granted by prosecutors in cases where it was believed the offense charged was not one appropriate for criminal prosecution. N.Y.Crim. P. Law § 170.55 (Practice Commentaries). Once a D.O.R. was granted, the case would be removed from the court calendar without an adjournment date and, if no further complaints were made, the matter would eventually be dismissed. N.Y.Crim. P. Law § 170.55 (Practice Commentaries); *see also Silver v. Gassman,* 12 Misc.2d 58, 171 N.Y.S.2d 314 (N.Y.Sup.Ct.1957) (power of district attorney to move case to trial; discussion of D.O.R. procedures).

Present day ACD's also provide the opportunity for a defendant to have his case dismissed. The statute outlining ACD procedures reads, in relevant part:

1. Upon or after arraignment in local criminal court upon information, a simplified information, a prosecutor's information or a misdemeanor complaint, and before entry of a plea of guilty thereto or commencement of a trial thereof, the court may, upon motion of the people or the defendant and with the consent of the other party, or upon the court's own motion with the consent of both the people and the defendant, order that the action be "adjourned in contemplation of dismissal," as prescribed in subdivision two.

2. An adjournment in contemplation of dismissal is an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice. Upon issuing such an order, the court must release the defendant on his own recognizance. Upon application from the people, made at any time not more than six months, in the case of a family of-

fense . . . one year, after the issuance of such order, the court may restore the case to the calendar upon a determination that dismissal of the accusatory instrument would not be in furtherance of justice, and the action must thereupon proceed. If the case is not so restored within such six months or one year period, the accusatory instrument is, at the expiration of such period, deemed to have been dismissed by the court in furtherance of justice.

\*    \*    \*    \*    \*    \*

8. The granting of an adjournment in contemplation of dismissal shall not be deemed to be a conviction or an admission of guilt. No person shall suffer any disability or forfeiture as a result of such an order. Upon the dismissal of the accusatory instrument pursuant to this section, the arrest and prosecution shall be deemed a nullity and the defendant shall be restored, in contemplation of law, to the status he occupied before his arrest and prosecution.

N.Y.Crim. P. Law § 170.55(1), (2), (8). The statute also provides that, in conjunction with an adjournment in contemplation of dismissal, a defendant may be required to observe various conditions including taking part in rehabilitative programs such as family violence counseling, participation in mediation, completion of community service, or attendance at alcohol awareness classes. N.Y.Crim. P. Law § 170.55(3)-(7).

2. Federal System's "Brooklyn Plan"

The federal court's diversionary program is often referred to as the "Brooklyn Plan." Joel Cohen & Jonathan Liebman, *Pretrial Diversion: An Alternative to Full Federal Prosecution?,* N.Y.L.J., April 6, 1994, at 1. Developed in the 1930's, the program evolved from an idea of Conrad Printzlien, the Chief United States Probation Officer for the Eastern District of New York. Stephen J. Rackmill, *Printzlien's Legacy, the "Brooklyn Plan," a.k.a. Deferred Prosecution,* 60 Fed. Probation, June 1996, [hereinafter Rackmill], at 8; Joel Cohen & Jonathan Liebman, *Pretrial Diversion: An Alternative to Full Federal Prosecution?,* N.Y.L.J., April 6, 1994, [hereinafter Cohen & Liebman], at 1 n. 3.

At the outset, Printzlien's "Brooklyn Plan" was meant to be used with youthful offenders as a way to "distinguish the situational juvenile offender from the more serious young thug who was beyond redemption" so that the former group could be diverted out of the criminal justice system. Rackmill at 8. The belief was that such juveniles should not be "stigmatized by prosecution and conviction." *Id.* at 8. The plan allowed defendants under the age of eighteen, who were deemed eligible by the Office of the United States Attorney based upon such criteria as their background and the severity of the offense, to avoid prosecution by complying with various conditions for a period of time and reporting to a probation officer. *Id.* at 8. The conditions to be met during the period prior to dismissal were: refraining from further violations of the law; living an honest and temperate life; keeping good company and hours; keeping away from undesirable places; working regularly; notifying probation when out of work; contacting probation when leaving the area or moving; contributing financial support to those for whom the juvenile was responsible; and following the directions of the probation department. Rackmill at 9.

The "Brooklyn Plan" was met with enthusiasm. Although initially implemented on a limited and informal basis, in 1964 the Department of Justice formally recognized the program and allowed its use in district courts throughout the country. Rackmill at 10. Deferred prosecution for juveniles as an alternative to traditional prosecution quickly gained popularity. Its use became widespread. Rackmill at 10.

In 1974 the enactment of the Juvenile Delinquency Act resulted in the placement of almost all juvenile cases in the hands of states and localities. Rackmill at 14. Nevertheless, interest in the "Brooklyn Plan" did not wane. Prosecutors began to employ the plan in federal adult cases, at first on a limited regional basis, and later in all districts. Rackmill at 14; *cf. Buehner v. Hoeven*, 228 N.W.2d 893, 900 (N.D.1975) (discussion of use of "Brooklyn Plan" in federal cases, noting its 1974 recommendation by the National Conference of Commissioners of Uniform State Laws). In 1982, deferred prosecution or the "Brooklyn Plan" for adults in the federal system was recognized by statute. 18 U.S.C. § 3154(10); *cf.* 18 U.S.C. § 3161(h)(2) (excludable for speedy trial purposes is period of time prosecution is deferred by way of written agreement between parties); 18 U.S.C. § 3607 (special probation and expungement for drug possession cases).

Today, conditions pending dismissal for adult offenders usually include those used in probation cases—paying restitution, maintaining employment, attending counseling, and performing community service. Cohen & Liebman at 1. Guidelines for defendant eligibility for pretrial diversion are set by the Department of Justice by way of internal policy. *Id.* Pretrial Services Agency officers conduct an investigation of the defendant who is under consideration for diversion to ascertain whether he or she is well-suited for the program. Thomas J. Wolf, *What United States Pretrial Services Officers Do*, 61 Fed. Probation, March 1997, at 23. It is well understood that defendants who commit crimes that are "spontaneous or isolated acts" will be those most likely diverted. Joel & Liebman at 1.

### 3. Goals and Benefits of Deferred Prosecution

The benefits of diversionary programs are well-recognized. One scholar explained:

> Proponents of the pretrial diversion programs justify their support for three different reasons. First, they argue, diversion offers a beneficial alternative to the harsh formal process of adjudication ... Second, it is designed to reduce social control over those accused ... Third, adherents claim that these programs contribute to the efficiency of the courts....

(italics omitted). Malcolm M. Feeley, *The Process is the Punishment: Handling Cases in a Lower Criminal Court* 234 (1979). Another has expressed it this way:

> [Diversion] is ... an attempt to convert ... arrest from a losing to a winning experience—to build a bridge for the accused between the fractured world of the street and the orderly world of lawfulness and responsibility. The defendant wins because he gets a job and the charges against him are dismissed ... and society wins because an individual who may be developing a criminal life style has been converted into a working employee and taxpayer.

Franklin E. Zimring, *Measuring the Impact of Pretrial Diversion from the Criminal Justice System,* 41 U. Ch. L.Rev. 224, 224–25 (1974) (*quoting Vera Institute of Justice, Programs in Criminal Justice Reform, Ten–Year Report 1961–71,* at 80 (1972)); *see also* Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 13.1, at 158–59 (1984) (noting that goal of diversion is to conserve prosecutorial and judicial resources); Note, *Pretrial Diversion from the Criminal Process,* 83 Yale L.J. 827, 827 (1974) (through diversion judicial energy saved for more serious cases). *But see* Note, *Pretrial Diversion: The Threat of Expanding Social Control,* 10 Harv. C.R.–C.L. L.Rev. 180 (1975).

When properly administered with procedural checks and balances, deferred prosecution plans protect both society and defendants. *See United States v. Lockwood,* 382 F.Supp. 1111, 1114 (E.D.N.Y.1974) ("Some method must be utilized to prevent abuse of plans which divert cases from the normal criminal machinery to ensure that individual rights are being safeguarded."). The legal equivalent of a "second chance" for those who have stumbled down the wrong path, deferred prosecution gives defendants an opportunity to engage in community–based rehabilitation and a new start. *United States v. Allen,* 683 F.Supp. 1136, 1137 n. 1 (E.D.Mich.1988) (pretrial diversion "not only preserves prosecutorial and judicial resources, but also protects many first–time offenders from obtaining criminal records"); Cohen & Liebman at 1; *see generally* Note, *Pretrial Diversion from the Criminal Process,* 83 Yale L.Rev. 827 (1974). As was noted by one wise scholar:

> If all mankind had to pay the supreme penalty of an everlasting punishment for any of its first faltering flubs and failures, our civilization would have withered long ago into forsaken malaise of hopelessness and sterility, without a candle for the future ... The universality of the second chance, the inherent right of the grand comeback in all things, has coursed through every artery of human intercourse for time without end....

Aaron Nussbaum, *A Second Chance: Amnesty for the First Offender* 89 (1974).

**B. Pre–Sentence Rehabilitation as a Grounds for Departure Under the Guidelines**

■ Rehabilitation through successful deferred prosecution has been an important standard of the American criminal justice system. *Cf.* Arthur W. Campbell, *Law of Sentencing* § 2:4, at 29 (2nd ed. 1991) ("Grounded upon humanitarian sentencing–reforms at the end of the Nineteenth century, rehabilitation continued as the country's dominant sentencing rationale until the late 1970's."); Robert O. Dawson, *Sentencing: The Decisions as to Type, Length, and Conditions of Sentence* 3 (1969) ("One of the major goals of the correctional process is the rehabilitation of the convicted offender."); Marc Miller, *Purposes at Sentencing,* 66 S. Cal. L.Rev. 413, 414 (1992) (traditional purposes of sentencing are retribution, deterrence, incapacitation, and rehabilitation). Its application is normally at the instance of the prosecutor, even though it requires cooperation from the judge and probation service. Still open is whether a modified form, one that would avoid incarceration but lead to a judgment of conviction, is possible on the initiative of the court.

With the advent of the Federal Sentencing Guidelines it has been argued that rehabilitation has a subsidiary role compared to deterrence and just desert punishment as rationales for sentencing. *See* Sharon M. Bunzel, *The Probation Officer and the Federal Sentencing Guidelines: Strange Philosophical Bedfellows,* 104 Yale L.J. 933, 951 (1995) ("The legislative history of the Sentencing Reform Act of 1984 ... reveals the abandonment of the rehabilitative model in favor of the just deserts philosophy.").

This view is mistaken. Rehabilitation is still a fundamental consideration for federal sentencing, and probation has been permitted under the Guidelines. *See* 18 U.S.C. § 3553(a)(2)(D) ("To provide the defendant with the needed educational or vocational training ... or other correctional treatment in the most effective manner."); 18 U.S.C. § 3562 (sentence of probation); 18 U.S.C. § 3563 (conditions of probation); Comprehensive Crime Control Act of 1984, Sen. R. No. 98–225, at 67 (1983) *reprinted in* 1984

U.S.C.C.A.N. (98 Stat.) 3182, 3250 (Title 18, Section 3553(a)(2) of the United States Code as created by the Comprehensive Crime Control Act "set forth the basic purposes at sentencing—deterrence, incapacitation, just punishment, *and rehabilitation*") (emphasis added); *See* Kenneth R. Feinberg, *The Federal Guidelines as the Underlying Purposes of Sentencing,* 3 Fed. Sent. Rep. 326 (May/June 1991) ("In the Sentencing Reform Act Congress spelled out the four traditional justifications of the criminal sentence—deterrence, incapacitation, retribution *and rehabilitation*—and expressly instructed the sentencing court to keep these purposes in mind ....") (emphasis added). Recent cases have underscored the importance of rehabilitation as a factor to be taken into account when rendering a sentence. *See, e.g., United States v. Williams,* 65 F.3d 301, 306 (2d Cir.1995) ("the district court had the authority to depart downward in order to facilitate Williams' rehabilitation").

So essential is the issue of rehabilitation under our criminal justice system that pre–sentence rehabilitation may be used as a grounds for downward departure from the too–rigid Federal Sentencing Guidelines. The Second Circuit first recognized pre–sentence rehabilitation as a grounds for departure from the guidelines in *United States v. Maier,* 975 F.2d 944, 948 (2d Cir.1992). In that case, defendant's sentencing was delayed for over a year and three months to allow her to participate in various drug treatment programs. *Id.* at 945. Even though "her efforts towards rehabilitation followed an uneven course" and she relapsed several times, *id.* at 945, the trial court departed downward from a fifty–one to sixty–three month applicable sentencing range and sentenced defendant to a four year period of probation based upon her voluntary drug treatment and rehabilitative efforts. *Id.* at 945–46. The Court of Appeals held that the large downward departure was appropriate since the guidelines had not explicitly precluded rehabilitation as a grounds for departure and because the trial judge had properly "examined all of the pertinent circumstances, including the nature of the defendant's addiction, the characteristics of the program she has entered, the progress she is making, the objective indications of her determination to rehabilitate herself, and her therapist's assessment of her progress toward rehabilitation and the interrupting of that progress." *Id.* at 948–49. *See also* Savalle C. Sims, *Should Post–Arrest Drug Rehabilitation Be A Consideration in Granting A Downward Departure Under the United States Sentencing Guidelines?,* 20 J. Legis. 271 (1994).

*United States v. Workman,* 80 F.3d 688, 701–02 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 319, 136 L.Ed.2d 233 (1996), approved a downward departure for defendant's pre–arrest rehabilitation as an adequate grounds for departure. In *Workman,* defendant Jamison was part of a narcotics ring operating in Buffalo, New York known as the "L.A. Boys." *Id.* at 691. The enterprise continued from the late 1980's until July of 1992. *Id.* at 692. Jamison had, however, left the group in 1990, served a period of incarceration on another offense and entered the United States Army upon his release. *Id.* at 701. He was arrested for his activity in the "L.A. Boys" sometime thereafter. *Id.* at 701. The court noted that:

> Jamison's apparently complete pre–arrest rehabilitation, although not on all fours with *Maier,* falls within its ambit. The trial judge was fully within his authority in granting Jamison a downward departure for rehabilitation.

*United States v. Workman,* 80 F.3d at 701–02 (italics omitted).

In August of this year, the Second Circuit again sanctioned reliance on post–crime, pre–sentence rehabilitation as a ground for downward departure. This time the circumstances were somewhat different from those posed in either *Maier* or *Workman.* In *United States v. Core,* 125 F.3d 74, 74–75 (2d Cir.1997), after entering into a plea agreement and pleading guilty in November of 1993, defendant Reyes was sentenced to 121 months imprisonment on a narcotics charge. An additional consecutive 60 months of imprisonment was imposed for possessing a firearm for "use" during the commission of the drug offense. 18 U.S.C. § 924(c)(1). The Supreme Court thereafter decided *Bai-*

*ley v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which narrowed the definition of "use" of a firearm under Section 924(c)(1) of Title 18 of the United States Code. The new definition did not cover the conduct for which defendant Reyes was sentenced. *United States v. Core,* 125 F.3d 74, 75–76. As a result, his conviction on that count was vacated. *Id.* at 75–76.

Upon resentencing in 1996, the trial court refused to take into account Reyes's rehabilitation since 1993 as a basis for a downward departure because, it concluded, that it was "without power to make a downward deduction based upon good conduct in prison." *Id.* at 75–76. Instead it increased defendant's sentence on the narcotics charge from 121 months to 151 months. The court of appeals reversed. It explained:

> We see no significant difference between the post–offense rehabilitation that we found in *Maier* to furnish a legally permissible grounds for departure and rehabilitation achieved in prison between imposition of the original sentence and resentencing.

*Id.* at 77. The amended sentence was vacated and the case remanded. *Id.* at 79.

Thus, pre–sentence rehabilitation—via drug–treatment, incarceration, assumption of familial, work, or education responsibilities or otherwise—is a ground that a sentencing court may rely upon to depart downward under the guidelines. As has been pointed out in connection with defendants who are recovering from drug dependence:

> Downward departure for post–arrest rehabilitation complements the notion of just retribution, because the rehabilitated offender ... has both asserted responsibility for her actions and taken positive steps toward reintegration into productive society.

Patricia H. Brown, *Considering Post–Arrest Rehabilitation of Addicted Offenders Under the Federal Sentencing Guidelines,* 10 Yale L. & Pol'y Rev. 520, 541 (1992). Under the appropriate circumstances, adequate steps should be taken to allow a defendant facing sentencing an opportunity to rehabilitate herself and change her circumstances. Such steps may include, in appropriate circumstances and with adequate controls, granting a request for deferred sentencing, similar to the sort of adjournment granted under structured diversion programs, so that a defendant may restore herself, on her own, to her "greatest potential." *Black's Law Dictionary* 1287 (6th ed.1990) ("rehabilitation" includes "[r]estoration of an individual to his greatest potential, whether physically, mentally, socially, or vocationally").

## C. Delay of Sentencing Pursuant to Federal Rule of Criminal Procedure 32

### 1. Text and History of Federal Rule of Criminal Procedure 32

Delay of sentencing at the request of the defendant is not explicitly permitted under the Federal Rules of Criminal Procedure. The text and history of Federal Rule 32 require that courts exercise discretion in deciding when sentencing should occur. *See generally* Fed.R.Crim.P. 32(a).

First adopted by the Supreme Court in 1944 and modeled after Rules I and II of the Federal Criminal Appeals Rules of 1934, Federal Rule of Criminal Procedure 32 sets forth parameters for the imposition of sentence and entry of judgment in federal criminal prosecutions. Fed.R.Crim.P. 32(a) (advisory committee's note to 1944 version) ("this rule is substantially a restatement of existing procedure"); *see generally* 5 Lester B. Orfield, *Criminal Procedure Under the Federal Rules* § 32:1, at 151–171 (1967) (history of the drafting of Rule 32); *Drafting History of the Federal Rules of Criminal Procedure* (Madeleine J. Wilken & Nicholas Triffen, eds., 1991) (compilation of official and unofficial draft versions of first set of Federal Criminal Rules of Procedure along with commentaries and suggestions).

Despite its many changes through the years, Federal Rule of Criminal Procedure 32 has always included a general statement regarding the timing of sentencing in federal criminal prosecutions. The original version of Rule 32 provided: "Sentence shall be imposed without unreasonable delay." Fed. R.Crim.P. 32(a) (1944 version). No guidance was provided in the text or commentaries to the rule on the issue of reasonableness. Reasonableness was determined as a discre-

tionary matter on a case–by–case basis. *See* 3 Charles Alan Wright, *Federal Practice and Procedure* § 521, at 46 (1982) (" 'unreasonable delay' under this subdivision will depend upon the circumstances").

The simple, yet somewhat ambiguous, statement that "[s]entence shall be imposed without unreasonable delay" remained in the rule until 1987 despite other interim modifications. In November 1987 the Comprehensive Crime Control Act of 1984, (hereinafter "Act"), took effect, working significant changes upon Rule 32, including the section of the rule dealing with the timing of sentencing. *See* Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 1984 U.S.C.C.A.N. (98 Stat.) 1837, 2014 and Pub.L. No. 99–217, 1995 U.S.C.C.A.N. (99 Stat.) 1728, 1728. The Act, among other things, created the United States Sentencing Commission, abolished the Parole Board, and set into play the guidelines sentencing regime. *See generally* Pub.L. No. 98–473, 1984 U.S.C.C.A.N. (98 Stat.) 1837; *see also* 3 Charles Alan Wright, *Federal Practice and Procedure* § 521, at 16 (Supp.1997).

Realizing that under the sentencing guidelines immediate sentencing would not always be beneficial to the parties, Congress added specific language to Federal Rule of Criminal Procedure 32 to allow for delay of sentencing. The 1987 amended rule, however, appeared to take some of the discretion out of time for sentencing. It provided that delays would only be permitted when both the government and the defense requested. In relevant part the amended rule read:

> Sentence shall be imposed without unnecessary delay, but the court may, upon motion that is jointly filed by the defendant and the attorney for the Government and that asserts a factor important to the sentencing determination is not capable of being resolved at that time, postpone the imposition of sentence for a reasonable time until the factor is capable of being resolved.

Congress in modifying the rule explained:

> Subdivision (a)(1) of Rule 32, relating to the sentencing hearing, modifies the current requirement that a sentence be imposed without unnecessary delay by per-

mitting the court, upon a joint motion of the defendant and the Government, to postpone the imposition of sentence for a period reasonably necessary to resolve an unresolved factor important to the sentencing determination ... This modification recognizes the interests of all concerned in weighing such factors prior to the sentencing hearing whenever possible.

Comprehensive Crime Control Act of 1984, Sen. R. No. 98–225, at 156 (1983), *reprinted in* 1984 U.S.C.C.A.N. (98 Stat.) 3182, 3339. The Legislature History of the 1984 Act set forth a non-exhaustive list of "factors" that would be relevant in determining whether to delay sentencing:

> Such factors as cooperating with the Government, testifying against a codefendant, acting as an undercover agent, as well as providing otherwise unavailable information, may be important to the sentencing decision.

Comprehensive Crime Control Act of 1984, Sen. R. No. 98–225, at 156 (1983), *reprinted in* 1984 U.S.C.C.A.N. (98 Stat.) 3182, 3339.

Two years later the rule was again modified. The requirement that both parties request and agree upon continuation of sentencing was eliminated. Subsection (a)(1) of the modified rule then provided, in part:

> Sentence shall be imposed without unnecessary delay, but the court may, when there is a factor important to the sentencing determination that is not then capable of being resolved, postpone the imposition of sentence for a reasonable time until the factor is capable of being resolved.

Amended Fed.R.Crim.P. 32 (1989 version), *appearing in* 109 S.Ct. 72, 75–76 (1988). The committee's note to the rule's amendment explained why the language requiring joint motions for delay of sentencing was eliminated:

> The amendment to subdivision (a)(1) is intended to clarify that the court is expected to proceed without unnecessary delay, and that it may be necessary to delay sentencing when an applicable sentencing factor cannot be resolved at the time set for sentencing. Often, the factor will relate to a defendant's agreement to cooper-

ate with the government. *But, other factors may be capable of resolution if the court delays sentencing while additional information is generated.* As currently written, the rule might imply that a delay requested by one party or suggested by the Court *sua sponte* might be unreasonable. *The amendment rids the rule of any such implication and provides the sentencing court with desirable discretion to assure that relevant factors are considered and accurately resolved.* In exercising this discretion, the court retains under the amendment the authority to refuse to delay sentencing when a delay is inappropriate under the circumstances.

Fed.R.Crim.P. 32(a)(1) (1989 advisory committee's note), *appearing in* 109 S.Ct. 72, 99–100 (1988) (emphasis added). Thus, judicial discretion for setting a sentencing date was returned and its importance reiterated. After 1989, judges were again allowed to decide whether a delay of sentencing was appropriate.

In 1994 Rule 32 was again reworked and rewritten. The 1994 version of the rule, with a few additional modifications irrelevant to the instant case, is the rule that is in force today. While much of the text of the new rule is derived from the former rule, as noted in the advisory committee's note, its provisions have been completely reorganized. The portion of Rule 32(a) retained the trial court's discretion to postpone sentencing now for "good cause." It reads:

When a presentence investigation and report are made under subdivision (b)(1), sentence should be imposed without unnecessary delay following completion of the process prescribed by subdivision (b)(6). *The time limits* prescribed in subdivision (b)(6) *may be either shortened or lengthened for good cause.*

Fed.R.Crim.P. 32(a)(1994 version), *appearing in* 114 S.Ct. 607, 615–630 (1993) (emphasis added). Subdivision (b)(6), referred to in subsection (a), is a new section added to the 1994 version of the rule. It sets forth "explicit time restraints [ ] for resolving objections raised to the content of presentence reports." 26 James Wm. Moore et al.,

*Moore's Federal Practice* § 632 App. 200–38 (3d ed. 1997). *See* 3 Charles Alan Wright, *Federal Practice and Procedure* § 521, at 16 (Supp.1997). According to the 1994 advisory committee's note:

The amendments to Rule 32 are intended to accomplish two primary objectives. First, the amendments incorporate elements of a "Model Local Rule for Guideline Sentencing" which was proposed by the Judicial Conference Committee on Probation Administration in 1987. That model rule and the accompanying report were prepared to assist trial judges in implementing guideline sentencing mandated by the Sentencing Reform Act of 1984.... It was anticipated that sentencing hearings would become more complex due to the new fact finding requirements imposed by guideline sentencing methodology. See U.S.S.G. Sec. 6A1.2. Accordingly, the model rule focused on preparation of the presentence report as a means of identifying and narrowing the issues to be decided at the sentencing hearing.

Second, in the process of effecting those amendments, the rule was reorganized. Over time, numerous amendments to the rule had created a sort of hodge podge; the reorganization represents an attempt to reflect an appropriate sequential order in the sentencing procedures.

Fed.R.Crim.P. 32(a)(1994 advisory committee's note), *appearing in* 114 S.Ct. 607, 670 (1993). In discussing the changes to the section of the rule addressing the time for sentencing, the 1994 advisory committee's note for Rule 32 explained that a delay in sentencing did not create a substantive violation. It reads:

Subdivision (a) retains the general mandate that sentence be imposed without unnecessary delay thereby permitting the court to regulate the time to be allowed for the probation officer to complete the presentence investigation and submit the report. The only requirement is that sufficient time be allowed for completion of the process prescribed by subdivision (b)(6) *unless the time periods established in the subdivision are shortened or lengthened by the court for good cause. Such limits are*

*not intended to create any new substantive right* for the defendant or the Government which would entitle either to relief if a time limit prescribed in the rule is not kept.

Fed.R.Crim.P. 32(a)(1994 advisory committee's note), *appearing in* 114 S.Ct. 607, 670–71 (1993) (emphasis added). None of the reasons for modifying Rule 32 purport to diminish a trial court's discretion in setting a sentencing date or to abolish the discretion specifically acknowledged in the language in the 1989 advisory committee note to Rule 32.

A memorandum from Judge William Terrell Hodges, Chairman of the Advisory Committee on Rules of Criminal Procedure, to Judge Robert E. Keeton, Chairman of the Standing Committee on Rules of Practice and Procedure, further clarifies the flexible position of the Advisory Committee with regard to time constraints on sentencing:

> In response to a significant number of commentators who expressed concern about codifying a specific time limit for sentencing, the Committee changed Rule 32(a) to retain the current language that sentencing should take place "without unnecessary delay."

Memorandum of Judge William Terrell Hodges, May 15, 1993, *appearing in* 114 S.Ct. 607, 642–43 (1993).

The history of Rule 32 demonstrates that the Rules set forth no rigid timeline for sentencing. Rather, the decision of when to impose sentence is in the sound discretion of the trial court. Sentencing need not occur immediately after trial or plea.

2. Case Law Interpretation of Federal Rule of Criminal Procedure 32

Cases predating Rule 32 recognized a court's discretion to decide when imposition of sentence should occur. *See, e.g., Barlow v. United States,* 6 F.2d 105, 106 (1st Cir.1925) ("It was discretionary with the District Judge as to when he would impose sentence."). More recent decisions support the conclusion that enactment of Rule 32 did not restrict the trial court's discretion to adjourn a sentence for good cause. *See United States v. Garcia,* 78 F.3d 1457, 1467 (10th Cir.1996) ("A sentencing court has broad discretion respecting the scheduling of sentenc-

ing procedures."); *United States v. Prescott,* 920 F.2d 139, 146–47 (2d Cir.1990) ("A sentencing court has broad discretion respecting the scheduling of sentencing proceedings."); *United States v. Alexander,* 860 F.2d 508, 512 (2d Cir.1988) ("It is ... beyond dispute that the sentencing court has discretion with regard to the scheduling of the sentencing proceeding."); *see also United States v. Pruitt,* 341 F.2d 700, 702 (4th Cir.1965) ("court exercised sound judicial discretion in postponing sentencing"); see also Charles Alan Wright, *Federal Practice and Procedure* § 521.1, at 46 (1982) ("The time of imposing sentence rests generally in the sound discretion of the court ....") (referring to an earlier version of Rule 32).

Many courts have recognized the desirability of delays in sentencing for good cause. For instance, *United States v. Pruitt,* 341 F.2d 700, 702 (4th Cir.1965) permitted deferral of sentence until defendant was tried on other pending criminal charges. In *Welsh v. United States,* 348 F.2d 885, 887 (6th Cir. 1965), it was held that a judge's decision to delay defendant's sentencing until he testified for the government in a later case against his co–defendant was appropriate. And, in *United States v. Tortorello,* 391 F.2d 587, 589 (2d Cir.1968), a sentencing delay at the request of the government was allowed. *United States v. Tortorello,* 391 F.2d 587, 589 (2d Cir.1968) (court "justified in granting the government's motion ... to delay sentencing on the ground that 'No judge should be called upon to sentence a man in a complex situation of this kind on a one–count plea when there are four or five counts [upon which] he has to go to trial'"; delay of more than two years).

Post–guideline case law reflects the even greater need for continuance of sentencing in order to give effect to the provisions of the Guidelines. As was explained in *United States v. Lopez,* 26 F.3d 512, 523 (5th Cir. 1994):

> [T]he district court can postpone sentencing for a reasonable period of time in order to evaluate a defendant's substantial assistance, including his testimony at a subsequent trial ... We think a defendant's substantial assistance is a factor that a

district court may properly find is important to the sentencing determination and justifies postponement of the imposition of sentence.

In the Eastern District of New York a large portion of criminal cases require delay in order to obtain cooperation of the defendant, to gather further information, to permit defendant to put his affairs in order, or for many other reasons. The power of the trial court to permit such postponements for good cause is never challenged by either the defendant or the prosecutor.

■ This is not to say that all delays in sentencing are permitted. A court may not indefinitely delay a sentence. *See United States v. De Luca*, 529 F.Supp. 351, 354–55 (S.D.N.Y.1981) (six and one-half year delay permitted while defendant regained competence). If there is an objection by the defense to the delay, deferral of imposition of sentence might be improper. Under such circumstances a defendant could have grounds to raise a speedy trial claim. *See, e.g., Pollard v. United States*, 352 U.S. 354, 361–62, 77 S.Ct. 481, 485–86, 1 L.Ed.2d.393 (1957) (delay in completing a prosecution might amount to unconstitutional deprivation of Sixth Amendment rights if sentencing delay is caused by deliberate or oppressive act of the government); *United States v. De Luca*, 529 F.Supp. 351, 354–55 (S.D.N.Y. 1981) ("assuming that Sixth Amendment speedy trial considerations do apply to the delay in imposing final sentence on defendant ..., the Court must determine whether the delay has been unreasonable in light of the peculiar circumstances of this particular case"); *cf. Barker v. Wingo*, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972) ("a speedy trial is guaranteed the accused by the Sixth Amendment to the Constitution"). *But see Berkowitz v. United States*, 90 F.2d 881, 884 (8th Cir.1937) (Rule I of the Supreme Court, predecessor rule to Rule 32 of the Federal Rules of Criminal Procedure, was not created "for the benefit or protection of the accused").

### D. One Time Sentencing Under Federal Rule of Criminal Procedure 35

■ The modifications to Rule 35 of the Federal Rules of Criminal Procedure in connection with enactment of the Guidelines legislation also weigh heavily in favor of allowing judges the opportunity to delay sentencing. Former Federal Rule of Criminal Procedure 35 allowed a sentencing judge to reduce a sentence for any reason. Fed. R.Crim.P. 35(b) (pre–November 1, 1987 version). A motion for such a reduction was known as a " 'plea for leniency' " and could be made by a defendant for a substantial period after judgment and commitment were rendered. *United States v. Ellenbogen*, 390 F.2d 537, 540, 543 (2d Cir.), *cert. denied*, 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968) ("power to reduce is an inherent power") (citations omitted). When first put in place in 1946, the rule gave a defendant sixty days after sentencing to file such a motion; in 1966 that time period was extended to 120 days. See Amendments to Fed.R.Crim.P. 35, *appearing in* 86 S.Ct. 212, 224–25 (1965); *see also* 3 Charles Alan Wright, *Federal Practice and Procedure* § 581, at 380 n. 1 (1982). The rule was:

> intended to give every convicted defendant a second round before the sentencing judge, and at the same time, it afford[ed] the judge an opportunity to reconsider the sentence in the light of any further information about the defendant or the case which may have been presented to him in the interim.

*United States v. Ellenbogen*, 390 F.2d 537, 543 (2d Cir.1968); *United States v. Morales*, 498 F.Supp. 139, 142 (E.D.N.Y.1980)(accord). Under the pre–guidelines rule, a sentencing court could take into account post–sentence behavior, such as rehabilitation, as a grounds for reducing a sentence. *Cf. United States v. Unterman*, 433 F.Supp. 647 (S.D.N.Y.1977) (cooperation with prosecutors post–sentence).

With the drastic changes in the sentencing laws provided by the Comprehensive Crime Control Act of 1984, extensive changes were also made to Rule 35. Comprehensive Crime Control Act 1984, Pub.L. No. 98–473, 1984 U.S.C.C.A.N. (98 Stat.) 1837, 2015; *see United States v. Hallam*, 723 F.Supp. 66, 69 (N.D.Ind.1989) (changes to Rule 35 "greatly limited the ability of a district court to alter a sentence"); 3 Charles Alan Wright, *Federal*

*Practice and Procedure* § 581, at 143 (Supp. 1997). In 1987 a new version of Rule 35 became effective. *See* Sentencing Act of 1987, Pub.L. No. 100–182, 1987 U.S.C.C.A.N. (101 Stat) 1266, 1266. Further changes were made to the rule in 1991.

The Rule 35 currently in effect no longer provides a sentencing judge broad discretion to reduce a sentence. The only modifications to sentence that are currently acceptable under Rule 35 are those: (1) that are imposed on remand after appeal, Fed.R.Crim.P. 35(a); (2) that correct a technical error within seven days of the imposition of sentence, Fed. R.Crim.P. 35(c); and (3) upon motion of the prosecutor, those based upon changed circumstances of the defendant. Fed.R.Crim.P. 35(b). The third category encompasses situations where the defendant has rendered substantial assistance on behalf of the government in an investigation or prosecution. Fed.R.Crim.P. 35(b). Such reductions can only occur after the government has filed a motion on the defendant's behalf. Fed. R.Crim.P. 35(b).

Given the recent rewriting of Rule 35 restricting power to correct a sentence based upon errors of fact or of the analysis of the sentencing court, it is imperative that judges have the full picture at the time of sentencing. Courts are no longer given a second chance to consider a sentencing decision. Now more than ever they must be certain that they are making a fully–informed decision when entering judgment.

IV. Application of Law to Facts

■ No speedy trial issues are implicated when, as here, the delay is at the request of the defense. Any possible Sixth Amendment speedy trial claims resulting from the delay have been waived in the interest of justice. As noted in *Tinghitella v. California,* 718 F.2d 308, 312–13 (9th Cir.1983):

> Even were we to conclude that sentencing is included within the speedy trial guarantee, the constitutional duty of the state to make a diligent, good–faith effort to sentence, and thus petitioner's right to be sentenced, arises only upon the petitioner's demand.

*See also State v. Wall,* 40 Conn.App. 643, 673 A.2d 530, 537–542 (1996), *cert. denied,* 237 Conn. 924, 677 A.2d 950 (1996) (no speedy trial right violation where sentencing occurred twenty–two months after conviction).

■ The Federal Rule of Criminal Procedure dealing with the time of sentencing, Rule 32, allows the one–year adjournment granted in the instant case. The text, history, and judicial interpretation of the rule make clear that a trial court has the discretion to determine when a delay of sentencing is needed and appropriate.

Delay of this defendant's sentence is necessary, proper, and for good cause. Without this delay the court will not have a full and fair sense of the person it is to sentence. There will be no second chance.

Pre–sentence rehabilitation is an important consideration that a sentencing court must take into account. If a defendant has made significant efforts at rehabilitation a court may depart downward from the sentencing range recommended by the guidelines. The court must also consider rehabilitation in the light of defendant's slight physical stature and emotional vulnerability, which may make her a target of abuse in prison. *See, e.g., Koon v. United States,* 518 U.S. 81, ——, 116 S.Ct. 2035, 2053, 135 L.Ed.2d 392 (1996); *United States v. Gonzalez,* 945 F.2d 525, 526–27 (2nd Cir.1991).

Considering every possible ground for departure is the duty of sentencing judges in every criminal case. *See United States v. Core,* 125 F.3d 74, 76–77 (2nd Cir.1997) ("the Guidelines themselves make clear that a court should consider in every case, not only in rare circumstances, whether a departure is appropriate"). It is incumbent upon a judge imposing a sentence to explore and consider the full range of acceptable sentencing alternatives. *See* Comprehensive Crime Control Act of 1984, Sen. R. No. 98–225, at 39 (1983), *reprinted in* 1984 U.S.C.C.A.N. (98 Stat.) 3182, 3222 (federal sentencing guidelines are meant to ensure that sentences are fair and "assure that each stage of the sentencing and corrections process ... is geared toward the same goals for the offender and for society"); Arthur W. Campbell, *Law of Sentencing* 40 (2d ed. 1992) ("To fulfill their professional

duties to both criminals and the community, judges and lawyers must be fully aware of the range of sentencing alternatives authorized by statute and case law, as well as the practical operation of their supporting personnel and institutions."). Judges can fulfill their responsibilities under the Guidelines only by utilizing the various kinds of sentences available that ensure protection of society and fairness to defendants—particularly defendants who are first–time offenders amenable to rehabilitation.

The adjournment here is akin to the one granted in *Treakle v. United States,* 327 F.2d 82, 83 (9th Cir.1964), where delay was found to be reasonable. In *Treakle* it was said:

> [T]he district court judge was endeavoring mightily to aid the appellant to aid himself, there was no unreasonable delay such as to violate Rule 32(a). Here there was a reason for the delay—an honest and legitimate reason which was to the advantage and benefit of the appellant.

*Treakle v. United States,* 327 F.2d 82, 83 (9th Cir.1964) (delay until parole from state sentence). The law, particularly in light of the possibility of an unduly harsh sentence under the Sentencing Guidelines, encourages the discretionary action taken in the present case.

V. Conclusion:

Second Circuit courts have been directed to exercise discretion in providing a sensible resolution of the sentencing process in the following language:

> In summary, we wish to emphasize that the Sentencing Guidelines to not displace the traditional role of a district judge in bringing compassion and common sense to the sentencing process ... In areas where the Sentencing Commission has not spoken ... district courts should not hesitate to use their discretion in devising sentences that provide individualized justice.

*United States v. Williams,* 65 F.3d 301, 309–10 (2nd Cir.1995) (citations and quotation marks omitted).

Defendant's request for postponement of sentencing is granted. Sentencing shall take place on September 21, 1998. Pre–Trial Services shall closely supervise defendant during this year and promptly report any deviation from appropriate, lawful, and fully rehabilitative behavior.